# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

COLLEGESOURCE, INC., a California
corporation,
              *Plaintiff-Appellant,*

              v.

ACADEMYONE, INC., a Pennsylvania
corporation,
              *Defendant-Appellee.*

No. 09-56528

D.C. No.
3:08-cv-01987-H-
CAB

OPINION

Appeal from the United States District Court
for the Southern District of California
Marilyn L. Huff, District Judge, Presiding

Argued and Submitted
October 8, 2010—Pasadena, California

Filed August 8, 2011

Before: Kim McLane Wardlaw and William A. Fletcher,
Circuit Judges, and Barbara M. Lynn, District Judge.*

Opinion by Judge William A. Fletcher

---

*The Honorable Barbara M. Lynn, United States District Judge for the
Northern District of Texas, sitting by designation.

10309

## COUNSEL

Alexander Papaefthimiou, Darren Quinn, Law Offices of Darren J. Quinn, Del Mar, California, William F. Woods, San Diego, California, for the appellant.

John P. Cooley, Karen Shichman Crawford, Duane Morris, LLP, San Diego, California, Aliza Rebecca Karetnick, David F. Landau, Duane Morris, LLP, Philadelphia, Pennsylvania, for the appellee.

## OPINION

W. FLETCHER, Circuit Judge:

CollegeSource, Inc. ("CollegeSource") sued AcademyOne, Inc. ("AcademyOne") in federal district court for the Southern

District of California, alleging that AcademyOne misappropriated material from CollegeSource's websites. AcademyOne moved to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). After jurisdictional discovery, the district court granted AcademyOne's motion to dismiss. We reverse. We hold that AcademyOne is not subject to general personal jurisdiction in California, but that it is subject to specific personal jurisdiction there.

## I. Background

CollegeSource and AcademyOne compete in the market to assist students and educational institutions with the college transfer process. CollegeSource, a California corporation with its principal place of business in California, maintains a digital collection of 44,000 course catalogs from 3,000 colleges and universities dating back to 1993. Each catalog is available as a .pdf file on CollegeSource's websites collegesource.com, collegesource.org, and tes.collegesource.org. Students and college administrators may consult the catalogs to compare courses at different schools, or to research what credits a transferring student will obtain or what prerequisites she will have satisfied by virtue of courses taken at her prior institution. CollegeSource compiled its collection in large part by digitizing paper catalogs using Optical Character Recognition software, which converts a printed page into a digital format that may be searched, copied, and pasted. CollegeSource alleges that its collection of catalogs cost more than $10 million to compile and has "significant commercial value." Students, parents, guidance counselors, and teachers may use CollegeSource's collection of catalogs for free, but libraries and educational institutions must pay to do so. CollegeSource has also used the information in its collection of catalogs to construct a searchable database of individual course descriptions that permits rapid assessment of course equivalencies and is available to educational institutions for a fee.

AcademyOne is a Pennsylvania corporation with its principal place of business in Pennsylvania. AcademyOne's ser-

vices resemble CollegeSource's. AcademyOne's "Course Atlas" contains course catalogs for the current academic year, and its "Course Equivalency Management Center" enables users to compare the equivalencies of courses at different schools. Both services are available on AcademyOne's websites academyone.com, collegetransfer.net, and courseatlas.com. Students who register with AcademyOne may search these websites for information on courses, educational institutions, and course equivalencies; create custom-designed "Equivalency Maps" and "Transfer Planning Guides"; upload documents such as letters of recommendation and resumes to a "Storage Center"; and post on a message board. AcademyOne permits students to use many of the websites' tools for free, but requires users to purchase subscriptions in order to access the websites' more advanced features, including the Course Equivalency Management Center. Most of AcademyOne's paying subscribers are educational institutions and state higher education agencies.

AcademyOne seeks to serve a national market, but it has specifically targeted California students and schools. For example, AcademyOne owns several Google AdWords that include the term "California." An AdWord is a word or phrase that, when entered as a search term in Google, prompts Google to display an advertisement designed by the AdWord owner linking to the owner's website. For example, AcademyOne owns the AdWord "California college transfer." When a Google user searches that phrase, Google returns both a list of relevant websites as determined by its own algorithm and advertisements for companies, including AcademyOne, interested in targeting people who have searched that phrase. The AdWord owner hopes that the user will visit its advertised website in addition to, or in lieu of, the websites returned in the search results proper. *See generally* Google AdWords, http://www.google.com/ads/adwords2 (last visited July 21, 2011); *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1142-43 (9th Cir. 2011). AcademyOne also solicited California colleges and state educational agencies by

phone and email, and sponsored the keynote speaker at a conference of state higher education executive officers in San Diego.

AcademyOne's efforts have borne fruit. Approximately 26,000 unique California IP addresses have visited AcademyOne's websites, amounting to 19 percent of all visitors to the website. This is the highest number of visitors from any state. Three hundred California students have registered with AcademyOne. This is 15 percent of all students who have registered with and provided an address to AcademyOne. Forty-eight California colleges and universities have submitted institutional profiles for publication on AcademyOne's websites. Two of AcademyOne's paid subscribers have California offices, though neither is a California corporation. However, AcademyOne has no offices, real property, or staff in California; is not licensed to do business in California; has no agent for service of process in California; and pays no California taxes.

In late 2005 and early 2006, a few months after its founding, AcademyOne made a series of attempts to acquire rights to CollegeSource's collection of course catalogs. In September 2005, Ed Johnson, AcademyOne's vice president for marketing, signed up for a trial membership in order to view CollegeSource's catalogs. In October 2005, Johnson phoned a CollegeSource sales representative to ask what CollegeSource would charge for rights to its collection of catalogs. He then sent a follow-up email asking, "[W]hat does it cost to obtain ALL your catalogs in electronic form, ASAP?" In December 2005, Peggi Munkittrick, AcademyOne's executive director for product strategy, emailed CollegeSource's CEO, Kerry Cooper, "to determine whether CollegeSource has any interest in assisting us (AcademyOne) with the creation of an online course inventory" and "whether CollegeSource had the interest and/or ability to provide us with an electronic file of courses that could be loaded into our course inventory." Munkittrick proposed "a conference call to further identify

what our opportunities might be." In January 2006, Munkittrick sent a follow-up email to Cooper "to determine whether a conversation is warranted to discuss how our companies might benefit from working together in an effort to create an online course inventory." Munkittrick again proposed a conference call. Cooper filed a declaration in the district court stating that CollegeSource "briefly" pursued AcademyOne's proposed partnership, but "terminated the discussions . . . because there was no point in selling away, at any price, our competitive advantage."

Later in 2006, AcademyOne began building its own collection of catalogs and a database of course descriptions. Two more AcademyOne employees registered for trial memberships with CollegeSource that allowed them to download three catalogs each. AcademyOne also hired a China-based contractor to whom AcademyOne provided a list of U.S. colleges and universities, as well as the URLs of their homepages. AcademyOne directed its contractor to collect catalogs and course descriptions from those schools' websites, and then to provide that information to AcademyOne for publication. During the collection process, the contractor's employees downloaded .pdf files of catalogs that were linked from schools' websites but were actually hosted on CollegeSource's servers. The record does not reflect why these schools chose to host their catalogs on CollegeSource's servers rather than their own.

AcademyOne put 680 catalogs from CollegeSource's collection on its websites. The catalogs were easily identifiable as having come from CollegeSource. The first page of each .pdf file containing a catalog was a "splash page" bearing CollegeSource's URL. The second page file contained CollegeSource's terms of use, which prohibit redistribution, modification, or commercial use of the catalogs without the consent of CollegeSource and the relevant school. Both of these pages were reproduced on AcademyOne's websites. AcademyOne also copied individual course descriptions from

CollegeSource's catalogs and pasted those course descriptions into its databases. The course descriptions were traceable to CollegeSource because they contained idiosyncratic errors created by CollegeSource's Optical Character Recognition software (for example, "cata1og" instead of "catalog") that were also present in CollegeSource's catalogs.

In April 2007, CollegeSource hand-delivered to Academy-One a cease-and-desist letter demanding the removal of CollegeSource's catalogs and course descriptions from AcademyOne's websites. David Moldoff, AcademyOne's CEO, filed a declaration in the district court stating that he did not know that CollegeSource was a California-based corporation until he received the cease-and-desist letter. He also stated that he removed all of the catalogs "[s]hortly after receiving the letter." CollegeSource disputes that declaration, stating that AcademyOne left misappropriated catalogs on its websites for several weeks following delivery of the cease-and-desist letter, and continues to keep misappropriated course descriptions on its websites.

CollegeSource brought suit in federal district court for the Southern District of California in October 2008, alleging six causes of action: (1) violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g); (2) violations of the California Computer Crimes Act, Cal. Penal Code § 502; (3) breach of contract; (4) misappropriation; (5) unfair competition, in violation of Cal. Bus. & Prof. Code § 17200; and (6) unjust enrichment. During discovery in a related action in Pennsylvania, CollegeSource learned that AcademyOne had registered two of its trademarks as AdWords. CollegeSource therefore filed an amended complaint in June 2009 adding causes of action for trademark infringement, in violation of 15 U.S.C. § 1114; and unfair competition, in violation of the Lanham Act, 15 U.S.C. § 1125. After jurisdictional discovery in this action, the district court granted AcademyOne's motion to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). CollegeSource timely appealed.

## II.    Standard of Review

We review a dismissal for lack of personal jurisdiction *de novo*. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper. *Id.* Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (internal quotation marks omitted). The plaintiff cannot "simply rest on the bare allegations of its complaint," but uncontroverted allegations in the complaint must be taken as true. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). "[W]e may not assume the truth of allegations in a pleading which are contradicted by affidavit," *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977), but we resolve factual disputes in the plaintiff's favor, *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits. Fed. R. Civ. P. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). California's long-arm statute, Cal. Civ. Proc. Code § 410.10, "is coextensive with federal due process requirements, [so] the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 800-01. For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Interna-*

*tional Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

## III.   Discussion

### A.   General Jurisdiction

**[1]** CollegeSource makes a cursory argument that AcademyOne is subject to general jurisdiction in California. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). For general jurisdiction to exist over a nonresident defendant such as AcademyOne, the defendant must engage in "continuous and systematic general business contacts," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984), that "approximate physical presence" in the forum state. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). "The standard is met only by 'continuous corporate operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities.' " *King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir. 2011) (quoting *International Shoe*, 326 U.S. at 318)). To determine whether a nonresident defendant's contacts are sufficiently substantial, continuous, and systematic, we consider their "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006). The standard for general jurisdiction "is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." Schwarzenegger, 374 F.3d at 801. *See also, e.g.*,

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, No. 09-56134, slip op. at 10340-47 (9th Cir. August 8, 2011).

CollegeSource argues that AcademyOne is subject to general jurisdiction because AcademyOne misappropriated CollegeSource's catalogs and course descriptions in California; markets its services to California students and educational institutions; has three hundred registered users and two paid subscribers in California; and maintains a "highly interactive" website.

**[2]** CollegeSource has not satisfied the "exacting" standard necessary to establish general jurisdiction. AcademyOne has no offices or staff in California; is not registered to do business in the state; has no registered agent for service of process; and pays no state taxes. *See, e.g.*, *Goodyear*, 131 S. Ct. at 2852; *Helicopteros*, 466 U.S. at 411; *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1124-25 (9th Cir. 2002); *Bancroft & Masters*, 223 F.3d at 1086. AcademyOne has not closed its Pennsylvania offices and removed its corporate operations to California. *Cf.*, *e.g.*, *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447-48 (1952).

**[3]** AcademyOne's alleged misappropriation of College-Source's intellectual property does not support general jurisdiction because the misappropriation was not a "continuous and systematic" forum activity, but was, rather, a few discrete acts over a relatively short period of time. *See International Shoe*, 326 U.S. at 317 (corporate agent's "conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there"); *Tuazon*, 433 F.3d at 1173 ("Generally, an isolated contact with the forum state . . . will not support general jurisdiction."). CollegeSource confuses the general and specific jurisdiction inquiries. A nonresident defendant's discrete, isolated contacts with the forum support jurisdiction on a cause of action arising directly out

of its forum contacts, but this is specific rather than general jurisdiction. *See, e.g.*, *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) (holding that one insurance policy issued by Texas insurer to California resident subjected insurer to personal jurisdiction in California to answer claim based on that policy); *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 n.7 (9th Cir. 1990) ("[W]here a defendant has only one contact with the forum state, a close nexus between its forum-related activities and the cause of the plaintiffs' harm may be required."), *rev'd on other grounds*, 499 U.S. 585 (1991); *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). However, discrete forum contacts such as AcademyOne's alleged acts of misappropriation do not support jurisdiction on causes of action unrelated to those contacts.

**[4]** Marketing to forum residents, at least where such marketing does not result in substantial and continuous commerce with the forum, does not support general jurisdiction. *See, e.g.*, *Shute*, 897 F.2d at 381-82 (no general jurisdiction despite advertising in the local media, the mailing of brochures and the payment of commissions to forum travel agents, and the conducting of promotional seminars); *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242-43 (9th Cir. 1984) (no general jurisdiction despite solicitation of orders, promotion of products to potential customers through the mail and through showroom displays, and attendance at trade shows and sales meetings). AcademyOne's single trip to a trade show in San Diego is an isolated contact of just the type held inadequate to sustain general jurisdiction in *Helicopteros*. *See* 466 U.S. at 416.

**[5]** AcademyOne's relationships with three hundred California registered users — from whom, Moldoff declares, AcademyOne realizes no profit — and two paid subscribers fall well short of the necessary substantial "volume" and "economic impact." *Tuazon*, 433 F.3d at 1172. *See, e.g.*, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 772, 779 & n.11 (1984) (no general jurisdiction despite circulation of 10,000-

15,000 copies of nonresident defendant's magazine in forum per month); *Bancroft & Masters*, 223 F.3d at 1086 ("[E]ngaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders."); *Scott v. Breeland*, 792 F.2d 925, 928 (9th Cir. 1986) ("systematic" sale of records in California by popular country music band from Tennessee insufficient to confer general jurisdiction).

Finally, as we explained in *Mavrix Photo*, the interactivity of a non-resident defendant's website typically "provides limited help in answering the distinct question whether the defendant's forum contacts are sufficiently substantial, continuous, and systematic to justify general jurisdiction." *Mavrix Photo*, No. 09-56134, slip op. at 10346. Interactive websites "where a user can exchange information with the host computer," *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), are now extremely common. If the maintenance of an interactive website were sufficient to support general jurisdiction in every forum in which users interacted with the website, "the eventual demise of all restrictions on the personal jurisdiction of state courts" would be the inevitable result. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980) (quoting *Hanson v. Denckla*, 357 U.S. 235, 251 (1958)). *See also, e.g.*, *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 426 (7th Cir. 2010); *Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 35-36 (1st Cir. 2010).

**[6]** In sum, AcademyOne's California activities do not "approximate physical presence" in California, so Academy-One is not subject to general jurisdiction in California.

## B. Specific Jurisdiction

CollegeSource argues in the alternative that AcademyOne has sufficient "minimum contacts" with California arising out of, or related to, its actions in misappropriating CollegeSour-

ce's catalogs and course descriptions to justify the exercise of specific jurisdiction. We agree.

We analyze specific jurisdiction under a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake*, 817 F.2d at 1421). CollegeSource bears the burden of satisfying the first two prongs. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). If CollegeSource does so, the burden then shifts to AcademyOne to set forth a "compelling case" that the exercise of jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

We focus on CollegeSource's misappropriation claim, which most readily supports the exercise of specific jurisdiction. We conclude that a California court may exercise specific personal jurisdiction over AcademyOne with respect to the misappropriation claim. Under the doctrine of pendent personal jurisdiction, the court may also exercise jurisdiction over the balance of CollegeSource's claims, which "arise[ ] out of a common nucleus of operative facts" with the misappropriation claim. *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180-81 (9th Cir. 2004).

### 1.   Purposeful Direction

**[7]** The first prong of the specific jurisdiction test refers to both purposeful availment and purposeful direction. We have

explained that in cases involving tortious conduct, we most often employ a purposeful direction analysis. *Schwarzenegger*, 374 F.3d at 802. CollegeSource has alleged tortious misappropriation of its catalogs and course descriptions, so purposeful direction analysis is appropriate. *See Love v. Associated Newspapers*, 611 F.3d 601, 608-09 (9th Cir. 2010) (applying purposeful direction analysis in action involving claims for violation of right to publicity based on misappropriation of plaintiff's likeness)*; Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988) (in action for misappropriation of plaintiff's name, permitting "the exercise of jurisdiction over a defendant whose only contact with the forum is the purposeful direction of a foreign act having effect in the forum state" (internal quotation marks, citation, and emphasis omitted)).

"In tort cases, we typically inquire whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Yahoo! Inc. v. La Ligue Contre le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc). The "effects" test, which derives from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Brayton Purcell*, 606 F.3d at 1128 (quoting *Yahoo!*, 433 F.3d at 1206).

As we explained in *Mavrix Photo*, No. 09-56134, slip op. at 10349, we believe that the Supreme Court's recent decision in *J. McIntyre Machinery, Ltd., v. Nicastro*, 131 S. Ct. 2780 (2011), is consistent with the line of cases finding specific jurisdiction when there has been purposeful direction. *J. McIntyre Machinery* was a product liability case. The question was whether suit could be brought in New Jersey state court against a manufacturer headquartered in the United

Kingdom based on an injury caused by an allegedly defective product made in the U.K. In performing a purposeful *availment* (rather than a purposeful *direction*) analysis, the plurality wrote:

> As a general rule, the exercise of judicial power is not lawful unless the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). There may be exceptions, say, for instance, in cases involving an intentional tort. But the general rule is applicable in this products-liability case, and the so-called "stream-of-commerce" doctrine cannot displace it.

*J. McIntyre Mach.*, 131 S. Ct. at 2785 (plurality op. of Kennedy, J.); *see also id.* at 2787 (distinguishing intentional tort cases from cases governed by this "general rule"). We therefore address the three requirements of the *Calder* "effects" test in turn.

**[8]** First, AcademyOne does not dispute that it committed intentional acts by downloading CollegeSource's catalogs, republishing them on its own websites, and obtaining course descriptions from those catalogs.

Second, we conclude that AcademyOne expressly aimed its actions at the forum state. "[T]he 'express aiming' requirement . . . is satisfied when 'the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.' " *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (quoting *Bancroft & Masters*, 223 F.3d at 1087). More directly pertinent here, "we have held that the 'expressly aimed' prong of the purposeful direction test can be met where a plaintiff alleges that the defendant individually targeted him by misusing his intellectual property on the defendant's website for the

purpose of competing with the plaintiff in the forum." *Love*, 611 F.3d at 609 n.4 (citing *Brayton Purcell*, 606 F.3d at 1129-30). In *Brayton Purcell*, we found the express aiming prong of the purposeful direction test satisfied where a nonresident defendant law firm plagiarized copyrighted material from the forum plaintiff law firm's website and republished the material. 606 F.3d at 1129-31. Because both firms practiced in the relatively specialized field of elder abuse law, we concluded that the nonresident defendant "knew of [the plaintiff's] existence, targeted [the plaintiff's] business, and entered direct competition with [the plaintiff]." *Id.* at 1130.

AcademyOne argues that it did not expressly aim its conduct at California because employees of its Chinese contractor rather than AcademyOne downloaded CollegeSource's collections of catalogs; because AcademyOne did not open the catalogs and so did not encounter CollegeSource's URL or terms of use; and because AcademyOne did not know that CollegeSource was based in California before receiving the cease-and-desist letter.

**[9]** In the circumstances of this case, we attribute no jurisdictional significance to the fact that employees of Academy-One's contractor performed the relevant work on AcademyOne's behalf. *See Burger King*, 471 U.S. at 479 n.22 ("[W]hen commercial activities are carried on in behalf of an out-of-state party those activities may sometimes be ascribed to the party, at least where he is a primary participant in the enterprise and has acted purposefully in directing those activities." (internal quotation marks and citations omitted)); *Sher*, 911 F.2d at 1362 ("For purposes of personal jurisdiction, the actions of an agent are attributable to the principal."). AcademyOne hired the contractor and gave it specific instructions on how to collect course catalogs and descriptions from schools' websites.

Likewise, we do not accept AcademyOne's contention that it was unaware that it had downloaded CollegeSource's cata-

logs and put them onto its own websites. AcademyOne's CEO, Moldoff, filed a declaration in the district court stating that AcademyOne's contractor's employees downloaded the .pdf files "without opening each individual files" so that "[n]o copyright notice or 'splash page' was seen by the contractor or any AcademyOne employee during the process." But Moldoff conceded that he did not personally supervise the contractor's work. Lin Zhou, AcademyOne's senior manager of development, testified in his deposition that the contractor opened the .pdf files during the data collection process in order to convert data in the catalogs into plain text usable in AcademyOne's databases. Because we are reviewing a dismissal for lack of personal jurisdiction, we resolve this factual conflict in CollegeSource's favor. *See Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

AcademyOne's assertion that it was unaware of CollegeSource's California place of business prior to its receipt of the cease-and-desist letter is implausible, to say the least. CollegeSource and AcademyOne were direct competitors in a relatively small industry. Three AcademyOne employees registered for trial memberships with CollegeSource in order to evaluate their competitor's product. AcademyOne's vice president for marketing, Johnson, telephoned and emailed a CollegeSource sales representative in 2005, seeking to purchase CollegeSource's catalogs. AcademyOne's executive director for product strategy, Munkittrick, sent several emails to CollegeSource's CEO in 2005 and 2006 seeking to schedule conference calls. CollegeSource's CEO, Cooper, declared, "Our California phone number and address is prominently displayed on our website's 'Contacts' page." It is unclear how AcademyOne employees would have learned to contact the relevant officers at CollegeSource other than through the latter's website or a reference that would have made College-Source's California location clear. It is difficult to believe that a conference call could have been scheduled without consideration of the time zones (and therefore the locations) of the participants. It is also difficult to believe that AcademyOne,

a newcomer to the college transfer market, was unaware of the location of its principal competitor, which it contacted several times in order to propose a business relationship.

In any case, it is undisputed that AcademyOne maintained the misappropriated catalogs on its websites for several months before delivery of the cease-and-desist letter — and, CollegeSource alleges, for several weeks thereafter — affording ample opportunity for AcademyOne's employees to encounter CollegeSource's URL and terms of use, and so to discover that the catalogs came from CollegeSource. We also note that CollegeSource had earlier rebuffed AcademyOne's attempts to purchase this very material. AcademyOne's assertion that it was fortunate enough to obtain for free, unintentionally and unknowingly, the material that it had once unsuccessfully attempted to purchase strains credulity.

[10] Finally, we conclude that AcademyOne's alleged misappropriation of CollegeSource's catalogs inflicted "harm that the defendant knows is likely to be suffered in the forum state." *Brayton Purcell*, 606 F.3d at 1128 (quoting *Yahoo!*, 433 F.3d at 1206). CollegeSource has alleged economic loss based on AcademyOne's misappropriation of its catalogs and harm to CollegeSource's competitive edge in the market of assisting California students and schools in the college transfer process. We have repeatedly held that a corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business. *See Dole Food*, 303 F.3d at 1113-14; *Panavision*, 141 F.3d at 1322 n.2; *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993). Further, any harm to CollegeSource's competitive advantage, such as "decreased business and profits," was felt in the forum of the relevant market. *Brayton Purcell*, 606 F.3d at 1131.

2. Claim Arising out of, or Related to, Forum Activities

[11] CollegeSource's misappropriation claim arises out of the actions of AcademyOne and its contractor in downloading

and republishing CollegeSource's catalogs. AcademyOne contends that its alleged acts of misappropriation are not "forum activities" because it did not know that it was downloading material that belonged to CollegeSource, or that CollegeSource was located in California. As explained above, we reject those contentions and therefore conclude that CollegeSource's claims arise out of AcademyOne's activities in California.

### 3. Reasonableness

Because CollegeSource has made a prima facie case that the assertion of specific jurisdiction over the defendant is constitutional, *Burger King*, 471 U.S. at 480, the burden shifts to AcademyOne to "present a compelling case" that the exercise of jurisdiction would be unreasonable and therefore violate due process. *Id.* at 477-78. In determining whether the exercise of jurisdiction comports with "fair play and substantial justice" and is therefore reasonable, we consider seven factors:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole Food*, 303 F.3d at 1114.

**[12]** AcademyOne addresses only the first, second, and seventh of these factors. As to "purposeful injection" into California, AcademyOne reiterates its unsuccessful arguments that it did not expressly aim any acts at California and did not

know that CollegeSource was a California resident. We have already determined that AcademyOne purposefully directed its actions at California. Actions directed at a forum resident expected to cause harm in the forum constitute purposeful injection. *See, e.g.*, *Panavision*, 141 F.3d at 1323; *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 475 (9th Cir. 1995). AcademyOne used California-specific AdWords and solicited California business by phone, email, and in-person marketing. Its websites include information on California schools and serve registered users who identified themselves as California residents. All of these contacts indicate purposeful injection. *See Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995) (purposeful injection demonstrated by "mail, faxes, and telephone calls to California . . . , [defendant's] newsletter sent to California, [and] dues collected from California members").

As to the "burden" of litigating in California, AcademyOne argues that it is "a small company based in suburban Philadelphia" whose "key employees and witnesses are in Pennsylvania," such that defending this action in California would be "onerous." The record provides no support for the claim that AcademyOne is "small." Further, while some important witnesses, such as AcademyOne's CEO, Moldoff, may reside in Pennsylvania, others, such as the supervisor of AcademyOne's Chinese contractor, do not. "[W]ith the advances in transportation and telecommunications and the increasing interstate practice of law, any burden [of litigation in a forum other than one's residence] is substantially less than in days past." *Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007) (quoting *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004)); *see also*, *e.g.*, *Dole Food*, 303 F.3d at 1115; *Panavision*, 141 F.3d at 1323. Indeed, AcademyOne's counsel was able to participate in oral argument on appeal before this court via videoconference. This factor favors AcademyOne, but only slightly.

As to the availability of a "suitable alternative forum," AcademyOne asserts that "[t]here is simply no reason that

CollegeSource cannot litigate its claims" in the Eastern District of Pennsylvania. "Whether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable." *Bauman v. DaimlerChrysler Corp.*, No. 07-15386, 2011 U.S. App. LEXIS 10010, at *56 n.19 (9th Cir. May 18, 2011) (quoting *Sinatra*, 854 F.2d at 1201). *See also Corp. Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 791 (9th Cir. 1987) (same). AcademyOne has not made that showing.

**[13]** After considering the *Burger King* factors, we conclude that AcademyOne has not shown that the exercise of jurisdiction in this case would be unreasonable.

## Conclusion

We conclude that AcademyOne is subject to specific personal jurisdiction, but not general personal jurisdiction, in California with respect to CollegeSource's misappropriation claims. Under the doctrine of pendent personal jurisdiction, AcademyOne is also subject to personal jurisdiction in California with respect to the remainder of CollegeSource's claims. *See, e.g.*, *Action Embroidery*, 368 F.3d at 1180-81. We reverse the district court's dismissal of CollegeSource's complaint and remand for further proceedings consistent with this opinion.

**REVERSED** and **REMANDED**.