CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE
I. INTRODUCTION
On October 4, 2016, Plaintiff Synoptek, LLC, filed this action against Defendant Synaptek Corporation. (Dkt. 1 [hereinafter "Compl."].) Synoptek alleged four causes of action: (1) trademark infringement based on Section 32 of the Lanham Act, 15 U.S.C. § 1114, (id. ¶¶ 37-43); (2) false designation of origin and unfair competition based on Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), (id. ¶¶44-49); (3) cancellation of registration for a confusingly similar mark under Sections 14 and 37 of the Lanham Act, 15 U.S.C. §§ 1064, 1119, (id. ¶¶ 50-60); and (4) unfair competition and unfair business practices under California Business & Professions Code §§ 17200 et seq. , (id. ¶¶ 61-66). Before the Court is Synaptek's motion to dismiss for lack of personal jurisdiction and improper venue or, in the alternative, to transfer this action to the Eastern District of Virginia. (Dkt. 17.) For the following reasons, the motion is DENIED.[1]
II. BACKGROUND
Synoptek is a limited liability company organized and existing under the laws of California and its principal place of business is in Irvine, California. (Compl. ¶ 1.) "Synoptek provides information technology management services and support to organizations worldwide," including "core infrastructure management, management and hosting of cloud services, in-depth security tools and services, using advanced toolsets supported by our 24x7 Enterprise *981 Operations Centers, IT consulting, custom development, applications support, business continuity/disaster recovery services and 24x7 end-user service and support." (Id. ¶ 7.) Synoptek is the owner of the SYNOPTEK trademark, U.S. Trademark Registration No. 3,424,720, filed on August 7, 2006, and registered as of May 6, 2008; it began using the mark as early as January 1, 2007. (Id. ¶¶ 8, 10.)
Synaptek is a Virginia corporation with its principal place of business in Reston, Virginia. (Dkt. 16-2 [hereinafter "Jinnah Decl."] ¶ 1.) It provides information technology services including providing wifi installation and support. (Id. ¶¶ 1, 13.) Synaptek primarily works as a government contractor; it was one of several subcontractors to Harris Corporation on a contract to provide wifi services for the Department of Veterans Affairs ("VA") and specifically in the VA's 331 medical centers throughout the United States. (Id. ¶¶ 11-12.) In that capacity, Synaptek field engineers would first perform wireless site surveys "to determine signal penetration throughout the facilities in order to accurately determine the placement of access points to achieve the best wireless coverage." (Dkt. 25 Ex. 1 at 172.) Those surveys were performed onsite. (Id. ) Then, Synaptek employees would take the resulting map of the entire facility offsite, where senior core engineers would review it, process it, and then submit it to Harris Corporation. (Id. at 173.) Harris Corporation, and ultimately the federal government, would review the Synaptek plan for wifi implementation, and return it either with approval or with requested changes. (Id. at 173.) To incorporate changes into the plan, a return to the site could conceivably be necessary. (Id. at 173.) Once a wifi implementation plan is finalized, then Harris Corporation employees will go to the site to install the components; Synaptek core engineers would monitor installation remotely. (Id. at 174.) After installation, there is post-installation validation testing done by Synaptek field engineers; any post-installation modifications were done remotely by core engineers. (Id. at 174-75.) Some final documentation is prepared and delivered to Harris Corporation. (Id. at 176; see also Dkt. 25 Exs. 10, 18-24.)
Synaptek followed this procedure at seven or eight VA medical centers in California, including a facility in Long Beach, California. (Id. at 176; Jinnah Decl. ¶ 14.) Four of Synaptek's former employees reside in California-Mr. Talamantes (who did not work onsite at any VA medical center), Mr. Mowat (a field engineer who worked onsite at VA medical centers inside and outside of California), Mr. Oatham (a principal wireless engineer and later a CORE engineer, overseeing site surveys, designs, and implementation), and Mr. Goecke (employed to support a Washington D.C. customer who was not involved in, nor did he work with, California VA medical centers). (Dkt. 25 Ex. 5 at 9.) In addition, Synaptek was the prime contractor with the Defense Logistics Agency in Philadelphia, Pennsylvania; in that capacity, Synaptek commissioned a subcontractor based in Manteca, CA, to perform electrical services work at a data center in Tracy, California. (Id. at 7.) Finally, fourteen other current or former Synaptek employees are not California residents but likely were called upon and dispatched by Synaptek to support the work at California VA medical centers. (Id. at 4-7; Dkt. 25 Ex. 1 at 131-37.)
During the duration of his employment with Synaptek, Mr. Goecke worked out of his Tracy, California home. (Dkt. 25 Ex. 2 at 21-22.) His offer of employment letter was sent by Synaptek to his home, and it contained both Synaptek's name and logo. (Dkt. 25 Ex. 6.) Synaptek also provided him with business cards containing its name and logo. (Dkt. 25 Ex. 2 at 25.)
*982 Finally, Synaptek sent him a jacket with its logo and name embroidered on it. (Id. )
Mr. Oatham received his employment letter by email at his home in San Jose, California. (Dkt. 25 Ex. 3 at 10.) He was recruited by Synaptek and was interviewed twice before being offered employment. (Id. at 10-11.) Synaptek gave him with business cards, when he would arrive at a site he would introduce himself as a Synaptek employee, and he had a Synaptek email address. (Id. at 21, 24-25, 37.) He also had a similar jacket to Mr. Goecke's and he would try to wear it on the first day he worked at a site. (Id. at 45-46, 74.) In general, Mr. Oatham would travel to a site for two weeks and then work from his California home for two weeks. (Id. at 33.) He was given a corporate card to pay for his airfare and hotels; Synaptek paid him a per diem and reimbursed him for other expenses such as his cell phone and internet connection after he filled out a Synaptek reimbursement form. (Id. at 28, 38-39.) Synaptek provided him with a laptop and monitor, shipped to his home via Federal Express, and at least some of his work involved filling out Synaptek-specific forms that had Synaptek's name and logo. (Id. at 34-35.)
Synaptek sent equivalent employment letters to its other two California employees. (Dkt. 25 Exs. 9, 10.) During the time Synaptek employed California residents, Synaptek reported taxable income to the State of California. (Jinnah Decl. ¶ 15; Dkt. 25 Ex. 2 at 26; Dkt. 25 Ex. 3 at 74-75.) Finally, Synaptek maintains a website, www.synaptekcorp.com, which is accessible in California, and through which California individuals could contact Synaptek. (Jinnah Decl. ¶ 8; Dkt. 25 Ex. 1 at 39.) However, Synaptek does not sell services through its website, and it does not otherwise advertise in California or solicit business in California. (Jinnah Decl. ¶ 8.)
III. DISCUSSION
A. Personal Jurisdiction
Federal courts may only decide cases over which they have statutory jurisdiction and where the exercise of jurisdiction comports with due process. Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co. , 284 F.3d 1114, 1123 (9th Cir. 2002). A plaintiff has the burden of establishing that personal jurisdiction exists over a defendant. Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd. , 328 F.3d 1122, 1128-29 (9th Cir. 2003). A court may rule on a defendant's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) without first holding an evidentiary hearing. Id. at 1129. In the absence of an evidentiary hearing, the plaintiff has the burden of making a prima facie showing of jurisdictional facts to withstand the motion to dismiss. Id. at 1129. When the plaintiff's version of the facts is not directly controverted, it is taken as true for the purposes of a Rule 12(b)(2) motion. Id. at 1129. Conflicts between the facts in the parties' affidavits are resolved in the plaintiff's favor. Id.
Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the court sits. Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme , 433 F.3d 1199, 1205 (9th Cir. 2006). California's long-arm statute provides that "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10. Thus, the jurisdictional analysis under California law and federal due process is the same. Yahoo! , 433 F.3d at 1205.
There are two categories of personal jurisdiction. First, a "court may assert *983 general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown , 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011). When there is general jurisdiction, any cause of action arising from an entity's dealings, regardless of whether the dealings upon which the cause of action rests are tied to the forum state, may be heard in the forum state. See Daimler AG v. Bauman , 571 U.S. 117, 134 S.Ct. 746, 754, 187 L.Ed.2d 624 (2014) (describing general jurisdiction as a situation where a foreign corporation's "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities") (quoting Int'l Shoe Co. v. Wash. , 326 U.S. 310, 318, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ).
Specific jurisdiction, in contrast, "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.... [S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Goodyear , 564 U.S. at 919, 131 S.Ct. 2846 (citations omitted). Specific jurisdiction comports with due process only if the non-resident defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Doe v. Unocal Corp. , 248 F.3d 915, 923 (9th Cir. 2001) (quoting Int'l Shoe , 326 U.S. at 316, 66 S.Ct. 154 ). The inquiry " 'focuses on the relationship among the defendant, the forum, and the litigation.' " Walden v. Fiore , 571 U.S. 277, 134 S.Ct. 1115, 1121, 188 L.Ed.2d 12 (2014) (quoting Keeton v. Hustler Magazine, Inc. , 465 U.S. 770, 775, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) ). The plaintiff "cannot be the only link between the defendant and the forum." Id. at 1122.
The Ninth Circuit "employ[s] a three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction." Picot v. Weston , 780 F.3d 1206, 1211 (9th Cir. 2015) (citing Schwarzenegger v. Fred Martin Motor Co. , 374 F.3d 797, 802 (9th Cir. 2004) ). The prongs are: (1) the non-resident defendant must purposefully avail himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws, or purposefully direct his activities or consummate some transaction with the forum or resident thereof; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. , it must be reasonable. Id. The plaintiff has the burden of proving the first two prongs. CollegeSource, Inc. v. AcademyOne, Inc. , 653 F.3d 1066, 1076 (9th Cir. 2011). If a plaintiff successfully does so, "the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable." Picot , 780 F.3d at 1212.
The "exact form" of the jurisdictional inquiry depends on the nature of the claim at issue. Id. The claims at issue in this case sound in tort. Polar Bear Prods., Inc. v. Timex Corp. , 384 F.3d 700, 720 (9th Cir. 2004), as amended on denial of reh'g and reh'g en banc , No. 03-35188, 2004 WL 2376507 (9th Cir. 2004) ("[T]rademark infringement generally sounds in tort."); Panavision Int'l, L.P. v. Toeppen , 141 F.3d 1316, 1321 (9th Cir. 1998)holding modified by Yahoo! , 433 F.3d 1199 (9th Cir. 2006)
*984 (same). Therefore, the Court applies a "purposeful direction" test and looks to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere. Picot , 780 F.3d at 1212.
Synaptek is not subject to general jurisdiction in California. Contrary to Plaintiff's arguments, (Dkt. 25 at 7-9), Synaptek's contacts with California do not come close to approximating physical presence or rendering it at home in California, Schwarzenegger , 374 F.3d at 801 ; Goodyear , 564 U.S. at 924, 131 S.Ct. 2846 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."). A corporation incorporated outside of California and with its principal place of business outside of California that provides wifi services to less than ten VA medical centers in California as part of a nationwide contract covering approximately 200 VA medical centers across the United States, (Jinnah Decl. ¶¶ 12-14), formerly employed four California residents out of a total workforce of approximately 100, (Dkt. 25 Ex. 1 at 21), and has hired an independent subcontractor in California is not at home in California. See Daimler , 134 S.Ct. at 761. Exercising general jurisdiction here would both render Synaptek subject to general jurisdiction throughout country and expand this Court's jurisdiction beyond constitutional limits. See id. at 761-62 ("Such exorbitant exercises of all-purpose jurisdiction [by finding it wherever a corporation engages in substantial, continuous, and systematic course of business] would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.' " (quoting Burger King Corp. v. Rudzewicz , 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ).
However, Synaptek is subject to specific jurisdiction in California. It purposefully directed activities aimed at California: it intentionally hired employees in California, sent materials and supplies to those employees in California, and directed additional employees to travel to and work in California to provide services at VA medical centers in California. (Dkt. 25 Exs. 6, 7, 8, 9; id. Ex. 2 at 25; id. Ex. 3 at 34; id. Ex. 1 at 135-36.) The fact that some portion of these contacts occurred at VA medical centers, even assuming that all of such centers constitute federal enclaves, (see Dkt. 16-1 [hereinafter "Mot."] at 7; Dkt. 30 at 12), is irrelevant to the Court's analysis, see Swanson Painting Co. v. Painters Local Union No. 260 , 391 F.2d 523, 526 (9th Cir. 1968) (relying on actions of a foreign corporation sending employees to work at a federal enclave within a state to find sufficient minimum contacts within the state to justify jurisdiction). Frankly, the Court is perplexed that Synaptek would describe its contacts with California as "attenuated," would characterize its employees' use of California infrastructure as not invoking the benefit and protection of California laws, and would argue that its connection to California is caused unilaterally by Synoptek. (Mot. at 7-8 (repeatedly invoking Walden , which held that actions in a foreign state that caused harm to a forum state's residents who were in that foreign state when they returned to the forum state did not suffice for the exercise of jurisdiction, for the proposition that Synaptek's interactions with California residents in California is irrelevant for jurisdictional analysis).) Finally, as to foreseeability of harm, when a party brings a claim for infringement of intellectual property, the Ninth Circuit has held that "[i]t is foreseeable that the loss will be inflicted ... in the forum where the infringement took place."
*985 Washington Shoe Co. v. A-Z Sporting Goods Inc. , 704 F.3d 668, 679 (9th Cir. 2012). Synoptek has demonstrated that Synaptek used the allegedly infringing mark, its name, in California through, inter alia , reports, presentations, business cards, emails, and clothing. (Dkt. 25 Exs. 10-16, 18-27; id. Ex. 3 at 45-46.) Accordingly, Synaptek, by purposefully directing its actions to California, knew the infringement was likely to occur there.
The next requirement is that the claims at issue "arise[ ] out of or relate[ ] to the defendant's forum-related activities." Picot , 780 F.3d at 1212. The Ninth Circuit utilizes a "but for" test to determine whether a particular claim arises out of forum-related activities. Ballard v. Savage , 65 F.3d 1495, 1500 (9th Cir. 1995). Contrary to Synaptek's argument that the relevant activities must take place in California, (Mot. at 8), the Ninth Circuit has made clear that actions outside of a forum state that cause harm in a forum state suffice for the "but for" test, Harris Rutsky , 328 F.3d at 1132 ("B & C had ongoing contacts with the forum state over a four-year period, and its alleged tortious conduct in London had the effect of injuring ASR in California. But for B & C's conduct, this injury would not have occurred. We are satisfied that ASR's claims arise out of B & C's California related activities."). The Court is once again perplexed that Synaptek would claim that, despite it hiring California residents to work in California, sending other employees to California to work at California VA medical centers, and engaging a California company as a subcontractor, "Synoptek's dispute with Synaptek has nothing to do with California." (Dkt. 30 at 13.) Simply stated, Synaptek is wrong that the "but for" test mandates that all potentially actionable conduct occur in California. (Mot. at 8.) The fact that Synaptek also used their name at 181 VA medical centers outside of California does not mean personal jurisdiction cannot arise in California. (Cf. id. ) On the contrary, a "single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state." Yahoo! , 433 F.3d at 1210. Here, but for Synaptek's actions directed toward California, Synoptek's cause of action in California would not have arisen, and accordingly the relatedness requirement is met.
As Synoptek has satisfied the first two elements, the burden now shifts to Synaptek to "set forth a compelling case that the exercise of jurisdiction would not be reasonable." CollegeSource, Inc. , 653 F.3d at 1076. Courts in the Ninth Circuit evaluate seven factors in making that determination: "(1) the extent of defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." Dole Food Co., Inc. v. Watts , 303 F.3d 1104, 1114 (9th Cir. 2002).
Synaptek has not set forth a compelling case that exercise of jurisdiction would be unreasonable. Even though work was primarily done at VA medical facilities in California, (Mot. at 9), as discussed above, that does not negate Synaptek purposefully injecting itself into California's affairs. Likewise, litigation in California is inherently somewhat burdensome on corporations based elsewhere; if Synaptek's purported burden (having its corporate leaders travel away from the corporate headquarters), (id. at 10), sufficed to preclude jurisdiction, specific jurisdiction would never exist and companies would only be able to be sued in their principal *986 place of business. Sovereignty is neutral as there is no conflict between Virginia and California in this case. (See id. ; Dkt. 25 at 15.) California has a strong interest in providing its residents with an effective means of redress for torts. In addition, while the early stage of the case and Synaptek's claim that fifteen witnesses will have to travel from Virginia to California indicate that Virginia would be at least as efficient as California, the significance of those facts is mitigated by the fact that this factor is only weighted slightly given advances in communication and travel. Panavision , 141 F.3d at 1323. Litigating in California is important to Synoptek's interest in convenient and effective relief, given the presence of many of its witnesses in or near California. (See Dkt. 25-1 ¶¶ 5-9.) Finally, while the Eastern District of Virginia is an alternative forum, the mere fact that its docket is lighter than the Central District of California does not make jurisdiction in this Court unreasonable and the traditional elements considered in this factor (location of evidence and witnesses, Panavision , 141 F.3d at 1323 ), is neutral, as there is evidence and witnesses in both fora. For these reasons, this Court has personal jurisdiction over Synaptek.
B. Venue
Synaptek argues that this case should be dismissed for improper venue or, in the alternative, transferred to the Eastern District of Virginia. (Mot. at 12-17.) Once venue is challenged, the plaintiff bears the burden of showing that venue is proper. Piedmont Label Co. v. Sun Garden Packing Co. , 598 F.2d 491, 496 (9th Cir. 1979).
Venue is governed by 28 U.S.C. 1391. Under that statute, venue is proper in a judicial district in which Synaptek resides. 28 U.S.C. § 1391(b)(1). Since Synaptek is a corporation, it is deemed to reside in this district for venue analysis if its contacts in the Central District of California would subject it to personal jurisdiction in this district (or if such contacts, while not meeting the threshold of personal jurisdiction, are more substantial than its contacts in any other California district). 28 U.S.C. § 1391(d). Synoptek has demonstrated that Synaptek hired an employee in Long Beach and provided approximately eight months of services to the Long Beach VA medical center under its name. (Dkt. 25 Exs. 8, 20.) Those contacts would suffice for personal jurisdiction in the absence of any other California contacts, and accordingly venue is proper under 28 U.S.C. § 1391(b)(1). Thus, Synaptek's motion to dismiss for improper venue is DENIED.
Even given proper venue in this district, a "district court has discretion to transfer a civil action "for the convenience of parties and witnesses, in the interest of justice," to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under section 1404(a), two findings are required for proper transfer: (1) the transferee district court is one where the action might have been brought, and (2) the convenience of the parties and witnesses and the interest of justice favor transfer. Hatch v. Reliance Ins. Co. , 758 F.2d 409, 414 (9th Cir. 1985).
As Synaptek is a Virginia corporation and the decision to service the California VA medical centers was made there, (Jinnah Decl. ¶¶ 2-3, 17), this federal question case could have been brought in the Eastern District of Virginia. Regarding the convenience of the parties and witnesses, and the interests of justice, a court may consider several factors in determining whether the interests of justice favor transfer, including: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the *987 plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof," in addition to the relevant public policy of the forum state. Jones v. GNC Franchising, Inc. , 211 F.3d 495, 498-99 (9th Cir. 2000). The moving party bears the burden of demonstrating that transfer is appropriate. Williams v. Bowman , 157 F.Supp.2d 1103, 1106 (N.D. Cal. 2001).
Synaptek has not met its burden of demonstrating that transfer is appropriate. Even though Synaptek is located in Virginia, Synoptek is located in California, so the convenience to the parties, the convenience to the witnesses, the availability of compulsory process, and the location of the evidence is neutral. As the claims here are based substantially on federal law, neither state is more familiar with the governing law and that factor is neutral. The parties' contacts with the respective forums counsels against transfer as Synaptek directed its activities to California and Synoptek is based in this district, (Dkt. 25-1 ¶ 4), while there is no evidence that Synoptek has contacts with the Eastern District of Virginia. Plaintiff's choice of forum in California also counsels against transfer. Contacts relating to Synoptek's cause of action slightly weigh toward transfer, as the decision to use the name Synaptek, to hire California employees, and to direct employees to California was made in the Eastern District of Virginia, while the actual alleged infringement occurred, inter alia , in this district. Finally, the costs of litigation are likely slightly higher in this district than in the Eastern District of Virginia due to this district's heavier caseload. However, given that this district is the busiest district court in the nation, (see Mot. Ex. A), the Court declines to weigh this factor heavily as it would always counsel for transfer. When all these factors are considered, Synaptek has not met its burden: the majority of factors are neutral, two factors weakly support transfer and two strongly support rejecting transfer. The Court accordingly declines to transfer this action to the Eastern District of Virginia.
IV. CONCLUSION
For the foregoing reasons, Synaptek's motion to dismiss for lack of personal jurisdiction, to dismiss for improper venue, and in the alternative to transfer venue to the Eastern District of Virginia is DENIED.

Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. See Fed. R. Civ. P. 78 ; Local Rule 7-15. Accordingly, the hearing set for March 20, 2017, at 1:30 p.m. is hereby vacated and off calendar.