**LIONS GATE ENTERTAINMENT INC., a Delaware Corporation, Plaintiff,**

v.

**TD AMERITRADE SERVICES COMPANY, INC., a Delaware Corporation; TD Ameritrade, Inc., a New York Corporation; Amerivest Investment Management, LLC, a Delaware Limited Liability Company; Havas Worldwide New York, Inc., a Delaware Corporation, Defendants.**

**Case No. CV 15-05024 DDP (Ex)**

United States District Court, C.D. California.

Signed March 14, 2016

Benjamin O. Aigboboh, Paul A. Bost, Jill M. Pietrini, Whitney Beth Walters-Sachs, Sheppard Mullin Richter & Hampton LLP, Los Angeles, CA, for Plaintiff.

Andrew B. Lustigman, Kyle C. Bisceglie, Matteo J. Rosselli, Olshan Frome Wolosky LLP, New York, NY, Laura Kassner

Christa, Christa and Jackson, Los Angeles, CA, for Defendants.

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

DEAN D. PREGERSON, United States District Judge

Presently before the Court is the Motion to Dismiss of Defendants TD Ameritrade Services Company, TD Ameritrade, Inc., Amerivest Investment Management, LLC, and Havas Worldwide New York, Inc. (collectively, "Defendants"). (Dkt. No. 49.) After considering the parties' submissions and hearing oral argument, the Court adopts the following Order.

## I. BACKGROUND

This copyright and trademark infringement case arises from Plaintiff Lions Gate Entertainment, Inc.'s intellectual property rights in the movie *Dirty Dancing* that Plaintiff alleges Defendants infringed. (First Am. Compl. ("FAC") ¶¶ 15, 22, 32.)

Plaintiff Lions Gate is a "global entertainment company" that produces, distributes, finances, licenses, and performs other related activities for movies and television shows. (Id. ¶¶ 15-16.) *Dirty Dancing* "is a world famous, Oscar-winning film, which was released in 1987 and became a massive box office hit, with hundreds of millions of dollars in worldwide earnings reported." (Id. ¶ 17.) Many scenes and lines from the film are particularly well-known. (Id.) The FAC notes in particular the line "Nobody puts Baby in a corner," said by Patrick Swayze to Jennifer Grey in the final climactic scene of the film. (Id. ¶ 21.) The line is followed by the final dance between the two main characters, culminating with Swayze lifting Grey over his head (the "dance lift"). (Id.)

Lions Gate claims to own "all right, title and interest in, and ... the copyright in," the film. (Id. ¶ 22.) Lions Gate also claims to own common-law trademark rights in DIRTY DANCING and NOBODY PUTS BABY IN A CORNER, the latter mark being one associated with *Dirty Dancing* the movie and both of which are used in motion pictures, various items of merchandise, and other adaptations of the film. (Id. ¶ 18-19, 23-24.) Lions Gate also claims to have registered the trademark DIRTY DANCING and to have applied for trademark registration in NOBODY PUTS BABY IN A CORNER. (Id. ¶ 24.) The latter trademark registration is "based on actual use of the mark for certain goods and on an intent to use the mark for the remaining goods identified in the applications." (Id.) Plaintiff claims that it has licensed the marks DIRTY DANCING and NOBODY PUTS BABY IN A CORNER for the "manufacturing, marketing, and sale of a variety of merchandise through approved licensees." (Id. ¶ 26.) Further, Plaintiff claims that it "licenses elements from *Dirty Dancing* to third parties, who use *Dirty Dancing* to advertise, market, or promote their goods and services." (Id.) Plaintiff claims that the trademarks have secondary meaning and are famous, as well as are associated with goodwill and quality, creating high value in the marks for Plaintiff and its licensees. (Id. ¶¶ 28-29.)

Defendants TD Ameritrade, TD Ameritrade Services, and Amerivest (collectively, "TD Defendants") are related financial services organizations. (Id. ¶¶ 4-8.) Havas Worldwide New York ("Havas New York") is an advertising agency that was hired in 2014 to create a national advertising campaign for the TD Defendants. (Id. ¶¶ 30-31.) The advertisements consisted of online videos, digital displays, social media, email, television, and print ads. (Id.) According to Plaintiff's FAC, "[t]he Advertising Campaign was generally published and displayed in California and was directly distributed to California residents, in

accordance with Defendants' plans and intentions." (Id. ¶ 31.) Further, "[a]pproximately 20% of TD Ameritrade's nationwide branch offices are in California" and "[e]mails sent as part of the Advertising Campaign included in their fine print a link to TD Ameritrade's online privacy statement, which includes information expressly directed to email recipients that reside in California." (Id.)

Plaintiff claims that the advertising campaign "intentionally copied the *Dirty Dancing* motion picture, and was intentionally designed to create an association with Lions Gate and its commercial activities by marketing TD Ameritrade's goods and services with phrases" that modified the NOBODY PUTS BABY IN A CORNER trademark and quote from *Dirty Dancing*, as well as the signature dance lift. (Id. ¶¶ 32-34.) Essentially, the main line of the advertisement campaign is: "Nobody puts your old 401k in a corner," with an encouragement to enroll in the TD Defendants' IRA plans. (Id. ¶ 32.) The advertisements often included images to conjure up *Dirty Dancing*, such as "a still and/or moving image of a man lifting a piggy bank over his head after the piggy bank ran into the man's arms." (Id. ¶ 34.) Some versions of the advertisements invoked the song, "(I've Had) the Time of My Life," which played during the final dance scene in the movie, with lines like "[b]ecause retirement should be the time of your life." (Id.) Plaintiff claims that all these uses render consumer confusion likely to occur. (Id. ¶¶ 35-36.)

Plaintiff claims that the advertising campaign ran from October 2014 to April 12, 2015, as Plaintiff contacted the TD Defendants about the campaign in April after Plaintiff learned of it. (Id. ¶¶ 37-38.) Havas New York responded to the cease and desist letter on behalf of itself and the TD Defendants, claiming that Plaintiff had no enforceable trademark rights and that Defendants were making a parody. (Id. ¶ 39.) Shortly after an exchange of letters regarding the advertising campaign, Defendants ceased the campaign, but still refused to pay Plaintiff for their alleged infringing use. (Id. ¶ 41.)

The parties continued communicating about settlement of Plaintiff's potential claims, with Plaintiff stating in June 2015 that if settlement discussions did not engage in earnest, it would file a lawsuit in the Central District of California. (Id. ¶ 42-44.) After the parties failed to settle, Defendants filed a declaratory judgment suit in the Southern District of New York. (Id. ¶¶ 45-47.) Plaintiff filed a motion to transfer venue in the New York case and also filed its own suit in the Central District of California. (Id. ¶ 49; see also Compl., dkt. no. 1.) On September 29, 2015, the New York federal court granted the motion to transfer; shortly thereafter, Defendants voluntarily dismissed their claims in the New York suit. (FAC ¶¶ 49-50.) Now, Defendants have filed a Motion to Dismiss for (1) lack of personal jurisdiction over Havas New York; and (2) Copyright Act preemption.

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(2)

█ Federal Rule of Civil Procedure 12(b)(2) provides that a court may dismiss a suit for lack of personal jurisdiction. The plaintiff has the burden of establishing that jurisdiction exists, but need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir.2006). "[U]ncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor."

Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir.2002).

### B. Motion to Dismiss Under Rule 12(b)(6)

A 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted requires a court to determine the sufficiency of the plaintiff's complaint and whether it contains a "short and plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a court must (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.2001), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001).

In order to survive a 12(b)(6) motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678, 129 S.Ct. 1937. Dismissal is proper if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly, 550 U.S. at 556, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir.2003).

## III. DISCUSSION

Defendants make two main arguments in support of their Motion to Dismiss. First, Havas New York claims that it is not subject to personal jurisdiction in California. (Mot. Dismiss at 1, 7-15.) Havas New York claims there is no general jurisdiction because it "does not have offices, employees, or other contacts" in California and Plaintiff cannot impute separately incorporated sister entities to Havas New York in order to establish jurisdiction. (Id. at 1, 7-10.) There is no specific jurisdiction either, Havas New York claims, because it "merely produced the advertisements and delivered them to its client, TD Ameritrade Services, outside of California." (Id. at 1, 10-15.) Because Havas New York "did not disseminate the advertisements or have any role or authority in determining whether, when, or where they would air," Havas New York claims it "has not purposefully directed any activity toward California." (Id. at 1-2.)

Second, all Defendants argue that four of Plaintiff's causes of action are preempted by the Copyright Act: (1) False Association and Unfair Competition under 15 U.S.C. § 1125(a); (2) Statutory and Common Law Unfair Competition under Cal. Bus. & Prof. Code § 17200 et seq.; (3) Trademark Infringement under 15 U.S.C. § 1125(a) and common law; and (4) Trademark Dilution under 15 U.S.C. § 1125(c) and Cal. Bus. & Prof. Code § 14247. (See Mot. Dismiss at 2, 15-25; FAC ¶¶ 51-81.) Plaintiff also has a cause of action for

copyright infringement that Defendants do not contest. (FAC ¶¶ 82-91.)

Defendants claim that the trademark and unfair competition claims are preempted by the Copyright Act because the "claims are premised on the unauthorized reproduction of elements of a creative work." (Mot. Dismiss at 2.) Defendants argue that the elements are protected by the Copyright Act and a plaintiff cannot bring other claims to vindicate the same rights, much less expand protection beyond the scope of copyright. (Id. at 2, 17-25.)

Plaintiff responds that there is personal jurisdiction over Havas New York, as strongly suggested by the New York federal court that heard the motion to transfer venue. (Opp'n at 1.) At the least, Plaintiff argues, the Court should grant jurisdictional discovery. (Id. at 1, 14-15.) Plaintiff claims that there is general jurisdiction over Havas New York because of its corporate relationships with related California entities and California-based clients. (Id. at 5-6.) There is also specific jurisdiction here, Plaintiff claims, because Havas New York created the advertisement campaign "knowing and intending it to be run in California and specifically directed to California consumers." (Id. at 7 (emphasis removed).) According to Plaintiff, because Havas New York purposefully directed its activities at California, Plaintiff's claims arise out of those activities, and exercise of jurisdiction would be reasonable, this Court should find it has personal jurisdiction over Havas New York. (Id. at 8-14.)

Second, Plaintiff argues it has alleged clear trademark and unfair competition claims that exist independently from its copyright claim—and that Plaintiff can enforce both of kinds of intellectual property rights. (Id. at 2, 16-25.) Plaintiff acknowledges that the trademark and copyright claims derive from one creative work, the film *Dirty Dancing*, but that "courts have consistently held that a single work may simultaneously be protected under copyright and trademark law." (Id. at 2.)

In their Reply, Defendants reiterate that there are no grounds for personal jurisdiction over Havas New York because: "Havas New York is a foreign entity, and contracted with another foreign entity, TD Ameritrade Services, to develop a national advertising campaign; that the Accused Ads were both created for and delivered to TD Ameritrade Services outside of California; and that TD Ameritrade Services distributed the Accused Ads." (Reply at 1.) As for the copyright preemption issue, Defendants claim that Plaintiff in its Opposition and FAC have "commingle[d] the quote/alleged mark with the film *Dirty Dancing* as a whole" and that there is no real use of the alleged trademark outside of the copyrighted motion picture work. (Id. at 2.)

### A. Personal Jurisdiction

 District courts have the power to exercise personal jurisdiction to the extent authorized by the law of the state in which they sit. Fed. R. Civ. P. 4(k)(1)(A); Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir.1998). Because California's long-arm statute authorizes personal jurisdiction coextensive with the Due Process Clause of the United States Constitution, see Cal. Civ. Proc. Code § 410.10, this Court may exercise personal jurisdiction over a nonresident defendant when that defendant has "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir.2004) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The defendant's contacts with the

forum must be of such a quality and nature that the defendants could reasonably expect "being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Personal jurisdiction may be either general or specific. See Schwarzenegger, 374 F.3d at 801.

### 1. General Jurisdiction

 General jurisdiction exists over a nonresident defendant when "the defendant ... engage[s] in 'continuous and systematic general business contacts' that 'approximate physical presence' in the forum state." Id. (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)) (internal quotation omitted). The standard for general jurisdiction is "exacting." Id. Where a defendant is subject to a state's general jurisdiction, he "can be haled into court in that state in any action, even if the action is unrelated to those contacts." Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir.2000). "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." Id.

The Supreme Court has held that general jurisdiction can be exercised over corporations in the state of incorporation and its principal place of business, although in an "exceptional case," there can be general jurisdiction in other fora. See Daimler AG v. Bauman, —— U.S. ——, 134 S.Ct. 746, 760–61 & n. 19, 187 L.Ed.2d 624 (2014). The Supreme Court did not provide much explanation as to those exceptional cases, other than to say that "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." Id. at 761 n. 19.

Here, Defendant Havas New York is incorporated in Delaware and has its principal place of business in New York—facts neither party contests. (Mot. Dismiss at 8; Opp'n at 5–6; FAC ¶ 9.) Instead, Plaintiff contends that this is an "exceptional case" where general jurisdiction can be found outside those paradigmatic categories. Plaintiff relies on CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1074 (9th Cir.2011), which stated that it considered the "longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets" of the defendant's contacts with the forum state when determining if general jurisdiction is appropriate.

Plaintiff claims that Havas New York has "large California-based clients" and clients "that have a substantial California presence," such as the TD Defendants. (Opp'n at 6 & n.3 (citing Walters Decl. ¶¶ 18–24); see also FAC ¶ 12.) Further, Plaintiff argues that Havas New York has "extensive, self-proclaimed connections to offices throughout the world, including 8 sister entities in California with whom Havas has overlapping corporate officers." (Opp'n at 6 & n.4 (citing Walters Decl. ¶¶ 12–17); see also FAC ¶¶ 10–11.) The FAC states that "Havas operates offices in both San Francisco, California and San Diego, California, and is affiliated with local offices throughout the U.S., including 8 offices in California, 2 of which are located in Los Angeles." (FAC ¶ 11.) Plaintiff claims that Havas New York "frequently partners and does business with its affiliates in California" and holds itself out to its clients as "under one roof." (Id.)

Defendants argue that Plaintiff has its facts wrong. Defendants claim that Havas New York "does not maintain an office in San Francisco, San Diego, or anywhere else in California." (Mot. Dismiss at 9 (citing Wynne Decl. ¶ 3).) These California

offices instead belong to sister Havas entities. (Id. (citing Wynne Decl. ¶¶ 12-13.) Further, Defendants argue that Plaintiff's claim about the amount of California clients is incorrect (citing Wynne Decl. ¶ 18), and regardless of the clients, merely having California clients is insufficient to find general jurisdiction. (Mot. Dismiss at 9 (citing CollegeSource, 653 F.3d at 1075).) The focus instead is on "where the business activity is performed." (Id. (quoting Cypert v. Broussard Bros., Inc., No. 3:13–cv–0050, 2013 WL 3480381, at *3 (S.D.Tex. July 9, 2013).) And Defendants claim that having sister entities—some of which are in California—cannot make general jurisdiction, particularly where there is no agency theory of jurisdiction or allegations of alter ego. (Mot. Dismiss at 9-10 (citing Daimler, 134 S.Ct. at 759; Wynne Decl. ¶¶ 12-15).)

The Court finds that the question of general jurisdiction over Havas New York in California is a close one on the factual record developed here. On the one hand, Havas New York does extensive business in California, even apart from its sister entities in California, and the company holds itself out to the public as a worldwide firm with internal connections within the different sister offices. On the other hand, Havas New York does not only or perhaps even primarily deal with clients or do business in California, much less have a physical presence in the state—the sister entities are not grounds for jurisdiction and there is no allegation of alter ego here.

Looking at the Ninth Circuit's factors from CollegeSource, it is unclear how long Havas New York has dealt in California. There does appear to be some longevity, as the firm has several large institutional clients here, although Havas New York may only be hired for a short time by some of its California clients. There is some uncertainty in the current record as to the volume of business Havas New York does in California. There is economic impact on both California clients and Havas New York through Havas New York's California clients, but again the record is not that developed as to this factor. There does not appear to be any physical presence by Havas New York itself in California other its visits to its clients and meetings with its sister entities. And there are no facts in the record about Havas New York's integration into the state's regulatory or economic markets here in California, so the Court cannot consider that factor.

Altogether, the Court could see an argument for general jurisdiction in this case, although the record could also benefit from some more development in that regard. If the Court finds specific jurisdiction, however, it need not rest its decision on this ground or order jurisdictional discovery.

### 2. Specific Jurisdiction

 Specific jurisdiction exists where a case arises out of forum-related acts. Schwarzenegger, 374 F.3d at 801–02. The relevant contacts with the forum are those of the defendant, not the plaintiff or third parties—no matter "how significant the plaintiff's contacts with the forum may be." Walden v. Fiore, —— U.S. ——, 134 S.Ct. 1115, 1122, 188 L.Ed.2d 12 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."). The Ninth Circuit analyzes specific jurisdiction according to a three-prong test:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the

forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger, 374 F.3d at 802. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Id. at 802 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476–78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

### a. First Prong: Purposeful Availment & Direction

To satisfy the first prong of the specific jurisdiction inquiry, courts examine whether a defendant "either purposefully availed itself of the privilege of conducting activities in [the forum state], or purposefully directed its activities toward [the forum state]." Id. Different tests are applied depending on whether the case is based on contract or tort, with "availment" generally used for contracts and "direction" generally used for torts. Id. "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there. Id.

"A showing that a defendant purposefully directed his conduct toward a forum state, by contrast, usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere"; this includes situations where activities are directed at residents of the forum even if there are no physical contacts with the forum. Id. at 803; see also World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297–98, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980) ("The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.").

This case is not one where Havas New York performed or executed a contract in California, or where it sought the benefits of the laws of California. Therefore, there are no grounds for a purposeful availment analysis, and the Court turns to purposeful direction.

The Ninth Circuit evaluates purposeful direction using a three-part "effects test" taken from the Supreme Court's decision in Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). See Schwarzenegger, 374 F.3d at 803. "The effects test is satisfied if (1) the defendant committed an intentional act; (2) the act was expressly aimed at the forum state; and (3) the act caused harm that the defendant knew was likely to be suffered in the forum state." Love v. Associated Newspapers, Ltd., 611 F.3d 601, 609 (9th Cir.2010)

Here, Havas New York committed an intentional act in its creation of the advertising campaign. The parties dispute whether the act was "expressly aimed" at California. Defendants argue that "alleged knowledge that TD Ameritrade was going to place the Accused Ads nationwide is insufficient to establish that Havas New York expressly aimed activity towards California." (Mot. Dismiss at 11.) Havas New York did not disseminate the advertisements, did not determine "whether and where to use the Accused Ads," and the advertisements do not advertise Havas New York's business. (Id. at 11-12.) Defen-

dants claim that for the Court to find jurisdiction despite these facts "would result in essentially national or worldwide jurisdiction over any creative agency that delivers its work to any company that operates in more than one state or internationally." (Id. at 12.)

In response, Plaintiff argues that Havas New York designed the allegedly infringing advertisement campaign "knowing and intending it to be run in California and specifically directed to California consumers." (Opp'n at 7 (citing Wynne Decl. ¶ 8; Walters Decl. ¶¶ 22-24; Huerta Decl. ¶¶ 2-5).) The campaign was nationwide, but Plaintiffs argue that it also targeted California specifically because TD Ameritrade has 20% of its branch offices and many individual retail investors in California. (Id. at 9 & n.7 (citing Wynne Decl. ¶ 8; Walters Decl. ¶¶ 22-23).) The fact that Havas New York did not disseminate the advertisements is not controlling, Plaintiff argues, because this case is just like Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

In Calder, the Supreme Court held that a reporter and editor of a national publication—both citizens of Florida—were subject to suit in California because the object of their allegedly libelous article was in California; it did not matter that the reporter and editor did not circulate the publication because they intentionally aimed their actions at California. Id. at 789, 104 S.Ct. 1482; see also Walden, 134 S.Ct. at 1123–24 & n. 7 (discussing Calder). The defendants argued that they could not control their employer's marketing and circulation activity, and that the fact that they could "foresee" the article's circulation in California is not sufficient for jurisdiction. Calder, 465 U.S. at 789, 104 S.Ct. 1482 (defendants also "liken[ed] themselves to a welder employed in Florida who works on a boiler which subsequently explodes in California" and argued that

while jurisdiction over the manufacturer may be appropriate, it "should not be applied to the welder who has no control over and derives no direct benefit from his employer's sales in that distant State"). The Supreme Court rejected these arguments, stating that the defendants were "not charged with mere untargeted negligence" but instead intentional tortious conduct expressly aimed at California:

> Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that inquiry would be felt by respondent in the State in which she lives and works and in which the *National Enquirer* has its largest circulation. Under the circumstances, petitioners must "reasonably anticipate being haled into court there" to answer for the truth of the statements made in their article.

Id. at 789–90, 104 S.Ct. 1482.

The Court finds this case analogous to Calder. Havas New York knew it was using Lions Gate's intellectual property—no party disputes the iconic nature of *Dirty Dancing* or that Havas originally claimed as a defense that it was merely parodying Plaintiff's film, indicating its knowledge of the original source—and Havas New York created an advertisement campaign that targeted Plaintiff's intellectual property rights in the film. Havas New York also knew that the ad would be in one of the largest bases of population—and relevant consumer population—in the nation for a nationwide advertising campaign: California.

The alleged harm was felt nationwide, consistent with the extent of the campaign, but the harm was also targeted toward California specifically as a major hub of the TD Defendants' business, the location of Plaintiff's principal place of business,

and the heart of the entertainment industry. See Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1020–21 (9th Cir.2002) (where defendant targeted consumers in forum with different kinds of advertisements and "knowingly injured" the plaintiff in the forum, which was the plaintiff's principal place of business and "the capital of the gambling industry"). Therefore, it does not matter that Havas New York did not distribute the advertisements; as in Calder, the intentional act, the direct aim to California, and the knowledge of the harm that would be caused in California are sufficient to establish purposeful direction.

Havas New York argues that Schwarzenegger puts a different gloss on Calder. (Reply at 11.) Schwarzenegger held there was no specific jurisdiction in California over an Ohio car company that ran an unauthorized advertisement using Schwarzenegger's picture because the creation and publication of the advertisement was expressly aimed at Ohio, not California— in fact, there was no evidence that the ad ever ran anywhere outside Ohio. Schwarzenegger, 374 F.3d at 807. That case is not analogous to this one because the ads Havas New York created not only used Plaintiff's intellectual property without authorization, but also the ads did run in California with Havas New York's knowledge that the campaign was national, including California.

Havas New York also argues that there is a difference when the advertisements are for the defendant itself, rather than for a different entity that decides to place the ads in a national audience. (Mot. Dismiss at 12; Reply at 11-12.) In the latter situation, Havas New York argues, there should be no jurisdiction because there is no attempt by the defendant to exploit the forum for the defendant's business advantage. In the former situation, a defendant has reached out to the forum with adver-

tisements for its own business, thus personal jurisdiction is appropriate. (Reply at 12.) Havas New York cites cases where defendants, working outside of the forum, were not found to be subject to personal jurisdiction based on national distribution by a third party of allegedly infringing work. (Mot. Dismiss at 12 (citing Bridgeport Music, Inc. v. Still N the Water Pub., 327 F.3d 472, 480–81 (6th Cir.2003)); Dos Santos v. Telemundo Commc'ns Grp., LLC, No. SACV 12–1373 JVS (MLGx), 2012 WL 9503003, at *6–7 (C.D.Cal. Dec. 19, 2012); McDonough v. Fallon McElligott, Inc., No. CIV 95–4037, 1996 WL 753991, at *4–6 (S.D.Cal. Aug. 5, 1996).

None of these cases are persuasive in this case. Bridgeport lacked any real evidence regarding even nationwide distribution of advertisements. McDonough found evidence both supporting and opposing specific jurisdiction, and while the court ultimately found no specific jurisdiction, it did so distinguishing Calder on the basis that there was no evidence that the ad targeted the forum.

Dos Santos also weighed evidence pointing both ways as to specific jurisdiction, and ultimately found that there was no evidentiary basis to find the defendants "acted with a desire or goal of appealing to California and exploiting the market for commercial gain, or that they directed Telemundo's broadcasts and advertising." Dos Santos, No. (MLGx), 2012 WL 9503003, at *7. The last statement of the court in Dos Santos about directing another defendant's broadcasts and advertising appears a bit in tension with Calder's finding that the fact that defendants do not actually distribute intentionally tortious material does not mean there is no specific jurisdiction as long as the defendants knew the material would be distributed in the forum state. Calder, 465 U.S. at 789–90, 104 S.Ct. 1482. Therefore, the Court holds that there is

express aiming of intentionally tortious conduct in this case as alleged by Plaintiff, satisfying the first prong.

#### b. Second Prong: Relation to Forum

■ "The second requirement for specific jurisdiction is that the contacts constituting purposeful availment must be the ones that give rise to the current suit. We measure this requirement in terms of 'but for' causation." Bancroft, 223 F.3d at 1088.

■ Here, but for Havas New York's nationwide advertisement campaign allegedly using Plaintiff's protected intellectual property, Plaintiff would not have been harmed in its home forum, California. Thus, the contacts Havas New York has with the forum—the advertisement campaign using Plaintiff's intellectual property—are also the conduct that gave rise to the suit.

#### c. Third Prong: Reasonableness of Jurisdiction

■ To determine reasonableness, courts look to seven fairness factors from the Supreme Court's Burger King decision:

(1) the extent of a defendant's purposeful interjection [into the forum]; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. No one factor is dispositive; a court must balance all seven.

Panavision, 141 F.3d at 1323 (internal citation omitted).

■ Defendants argue that the exercise of jurisdiction over Havas New York would be unreasonable because it has not reached out to California in any way and defending in California would be a large

burden since it is based in New York, which is also the location of "all relevant witnesses and evidence." (Mot. Dismiss at 14.) Plaintiff argues that this showing is not enough to meet the burden that is on Defendant after Plaintiff makes its prima facie case of proper jurisdiction. (Opp'n at 13.) Plaintiff also address each of the factors:

Havas purposefully directed itself into California by creating, designing and implementing the Advertising Campaign for a client whose presence in California is extensive, and specifically designed it to target California customers, using assets known to belong to a California-based company.

In addition, Havas regularly services California-based clients, including by traveling for client meetings. Havas also touts itself as "one of the largest integrated marketing communications agencies in the world," and its public statements confirm that it regularly works with its various California affiliates. Thus, it undoubtedly has the resources to defend itself in California, where it has at least 8 sister offices.

Finally, this Court has an overwhelming interest in adjudicating this dispute. Lions Gate maintains its principal place of business here, the intellectual property at issue resides here, and, as the New York Court held, California is the most convenient and efficient forum.

(Id. at 14 (paragraph breaks inserted).) Defendants' Reply does not address these points or make further arguments as to the reasonableness of exercising personal jurisdiction. (Reply at 13 n.4.)

The Court finds that exercise of personal jurisdiction over Havas New York is reasonable. The Court described above the extent of Havas New York's purposeful direction to the forum. There is a burden on Havas New York in defending in Cali-

fornia, but the burden is slight considering that Havas New York has related entities and business with clients in California. There is no conflict with the sovereignty of New York, particularly as this case would be in federal court in either state and the New York federal court transferred the case to this jurisdiction. This state has a strong interest in adjudicating the dispute because the case concerns the protection of valuable intellectual property owned by a California-based company in one of California's most famous and important industries.

As there has already been a case in New York that was transferred here, and Defendants dismissed that case voluntarily, it is most efficient to resolve this dispute in one court and to stop the forum transfers by both parties. The forum is important to Plaintiff's ability to have convenient and effective relief because Plaintiff is based here and suffered harm to its intellectual property here. There is another forum available—New York—but the court there already decided it is more convenient and appropriate for the case as a whole to be decided in this forum. Therefore, the Court holds that exercise of specific personal jurisdiction is reasonable in this case.

**B. Copyright Act Preemption and 12(b)(6)**

The Copyright Act preempts rights under common law or state statutes that "are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106." 17 U.S.C. § 301(a). The Supreme Court has extended this principle of copyright preemption to the Lanham Act and federal trademark protection. See Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 33–38, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003); see also Mercado Latino, Inc. v. Indio Prods., Inc, No. CV 13–01027 DDP, 2013 WL 2898224, at *4 (C.D.Cal. June 12, 2013) ("To the extent that the Copyright Act provides an adequate remedy, therefore, Lanham Act claims are preempted.").

The Ninth Circuit has adopted a two-part test for copyright preemption. First, the court "determine[s] whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." Laws v. Sony Music Entm't, Inc., 448 F.3d 1134, 1137 (9th Cir.2006) (footnotes omitted). Second, if the court determines the subject matter is within copyright, then the court "determine[s] whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." Id. at 1137–38.

**1. Subject Matter of Copyright**

■ First, the trademark and unfair competition claims must relate to subject matter within the scope of the Copyright Act for preemption to apply. Section 102 of the Copyright Act extends copyright protection to "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a); see also id. § 103 (covering compilations and derivative works). The statute specifically includes "motion pictures and other audiovisual works," such as the film *Dirty Dancing*, as well as literary works, musical works, and choreographic works—all of which may be at issue here with the song, the screenplay quote, and the dance lift. Id. § 102. Therefore, copyrighted and copyrightable subject matter is involved in Plaintiff's unfair competition and trademark causes of action.

**2. Exclusive Rights of Copyright & Dastar Preemption**

■ Second, the right asserted in the state law action must be equivalent to a right protected under the Copyright Act for preemption to apply. Section 106 in the Copyright Act outlines the exclusive rights

of a copyright owner, including reproduction of the copyrighted work, preparation of derivative works, distribution of the work, and public performance and display of the work. 17 U.S.C. § 106(1)-(5). "To survive preemption, the state cause of action must protect rights that are qualitatively different from the rights protected by copyright: the complaint must allege an 'extra element' that changes the nature of the action." Grosso v. Miramax Film Corp., 383 F.3d 965, 968 (9th Cir.2004), amended on denial of reh'g 400 F.3d 658 (9th Cir. 2005).

■ The same kind of preemption principle applies for federal Lanham Act causes of action as for state and common-law causes of action. In Dastar, the Supreme Court explained that federal trademark law could not be relied upon to extend copyright or patent rights. Dastar, 539 U.S. at 33–34, 123 S.Ct. 2041. Instead, copyright and patent rights expire with those rights' statutory timelines, and not the potentially endless trademark protections. Id.

■ Further, trademark law is designed to protect the "origin of goods" and prevent consumer confusion as to the source of goods, not to protect "originality or creativity," those being protected by copyright and patent law. Id. at 37, 123 S.Ct. 2041. Thus, the Court interpreted "origin of goods" in the Lanham Act to refer "to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." Id.

The Court noted that this did not prevent the plaintiff in that case from raising a claim for false advertising under § 43(a)(1)(B) of the Lanham Act, which could occur, for example, if the defendant movie producer "were, in advertising or promotion, to give purchasers the impression that the video was quite different from that series" that the producer had

substantially copied. Id. at 38, 123 S.Ct. 2041. In that situation, the Court explained, there would not be a "reverse passing off" cause of action under § 43(a)(1)(A) for confusion as to the origin of the goods, but instead there could be a cause of action for misrepresentation of the nature, characteristics, or qualities of the goods. Id.

Defendants claim here that the gravamen of Plaintiff's complaint is an alleged violation of the rights in Plaintiff's copyrighted film, *Dirty Dancing*. (Mot. Dismiss at 20.) As Defendants see it,

Lions Gate alleges that Defendants copied elements of the movie *Dirty Dancing*, made modifications to those elements, and then passed them off as their own original content in the Accused Ads; such acts caused confusion, mistake, or deception as to Defendants' services originating with or being endorsed by Lions Gate; and such acts have harmed Lions Gate, its marks, the movie *Dirty Dancing*, Lions Gate's licensing program, and its goodwill and reputation.

(Id. at 20-21.)

Defendants claim that Plaintiff's cause of action for false association and unfair competition under § 1125(a) is barred under a plain reading of Dastar, which dealt with the same statutory section in terms of false designation of origin. (Id. at 21-23.) Defendants argue that other courts have found claims of false association the same as false designation of origin, which was at issue in Dastar, and different from Dastar's carve out for misrepresentation of the nature, characteristics, or qualities provision under § 1125(a)(1)(B). Plaintiff's second cause of action is for California and common-law unfair competition protection, and Defendants cite cases holding that state and common-law protection is subject to the same result as federal unfair compe-

tition law in terms of copyright preemption. (Id. at 23-24.)

Defendants group together in their analysis the third and fourth causes of action for trademark infringement and dilution. Defendants explain that for the dilution cause of action, Plaintiff's mark is not famous as an originator or mark of goods, as the statute requires—it is famous as part of the copyrighted film. (Id. at 24 & n.12.) Further, the allegations as to these two causes of action, Defendants claim, are really copyright infringement claims and the FAC fails to establish any use of the NOBODY PUTS BABY IN A CORNER mark as an actual trademark. (Id. at 24-25.)

Plaintiff puts its arguments differently: "Lions Gate owns trademark rights in NOBODY PUTS BABY IN A CORNER, and Defendants used that mark, or a mark confusingly similar thereto, in advertisements for their financial services in a manner likely to confuse as to their services' association with, or endorsement by, Lions Gate." (Opp'n at 18-19.) Plaintiff claims that it has made separate copyright infringement claims, and that its discussion of the film, song, and dance lift in relation to the trademark are based on the false association cause of action. (Id. at 19.) Importantly, Plaintiff claims, "a single work may be protected as an original work of authorship under copyright law and as a trademark." (Id. (emphasis omitted) (citing Tristar Pictures, Inc. v. Del Taco, Inc., No. CV 99–07655 DDP, 1999 WL 33260839, at *3 (C.D.Cal. Aug. 31, 1999).) Dastar did not change this fact, Plaintiff argues, citing cases. (Id. at 22-23.)

The Court notes that the FAC bleeds together its copyright, trademark, and unfair competition claims—and the facts that support each cause of action—making it challenging for the Court, much less Defendants, to determine the allegedly separate theories underlying the different rights. As pled and argued, it appears that Plaintiff seeks to use copyright aspects either as a bolster for its trademark and unfair competition claims, or as the real basis of the claims—the latter of which is certainly not permissible. Further, it is unclear from the FAC what the alleged mark NOBODY PUTS BABY IN A CORNER has been or is intended to be used for in terms of consumer confusion; at oral argument, Plaintiff's counsel represented that the mark had been used on goods such as posters, journals, clothing, and the like since 1987.

■ Plaintiff's first cause of action, false association and unfair competition under 15 U.S.C. § 1125(a), involves the same statutory subsection as was involved in Dastar: § 1125(a)(1)(A). See Dastar, 539 U.S. at 31, 123 S.Ct. 2041; Lexmark Int'l, Inc. v. Static Control Components, Inc., —— U.S. ——, 134 S.Ct. 1377, 1384, 188 L.Ed.2d 392 (2014) ("Section 1125(a) thus creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)."). False association and its related unfair competition is the same claim as that of false designation of origin, just under a different name. Thus, Plaintiff's cause of action would appear barred under Dastar, as detailed in the cases cited by Defendants. (See Mot. Dismiss at 21-23.) Therefore, the Court dismisses this cause of action with prejudice because the cause of action is preempted and any amendment would be futile.

■ Plaintiff's second and third causes of action, statutory and common-law unfair competition and trademark infringement under the common law and 15 U.S.C. § 1125(a), face similar problems. These causes of action are based on Defendants essentially copying Plaintiff's intellectual property and slightly changing the words—creating a derivative work, per-

haps—and using the changed sentence in advertising its own products. Under standard state and common-law preemption analysis from the Ninth Circuit, the state and common-law claims alleged here are preempted by copyright law because the same rights are asserted in these causes of action as are asserted in the copyright infringement cause of action, namely reproduction and distribution of the copyrighted work and preparation of a derivative work. (See FAC ¶¶ 59-61, 65-68.)

For the federal claim, under Dastar, the same issue regarding consumer confusion as to the origin or association of the goods arises here for trademark infringement. Trademark law is designed to protect consumers from, for example, "the Coca-Cola Company's passing off its product as Pepsi-Cola or reverse passing off Pepsi-Cola as its product." Dastar, 539 U.S. at 32, 123 S.Ct. 2041. Thus, if the TD Defendants were to sell posters, journals, and clothing with NOBODY PUTS BABY IN A CORNER on them, or take the goods Lions Gate alleges it produces or licenses and put TD's own mark on it, then there would be a solid origin claim under the Lanham Act, and surely any state and common-law equivalent. Dastar explicitly provided for that—the distinction it drew for origin claims was between "the producer of the tangible goods that are offered for sale" (allowable) and "the author of any idea, concept, or communication embodied in those goods" (preempted). Id. at 37, 123 S.Ct. 2041.

The problem is that nothing like that has occurred here. Plaintiff claims that Defendants have used a slightly altered version of its trademark in advertising for services that Plaintiff argues will cause consumer confusion as to Plaintiff's endorsement or association with those services, even though Plaintiff does not allege it practices or licenses those services. That is, according to Plaintiff, a consumer view-

ing the TD advertisements would be confused as to the association of the film company Lions Gate (or at least the movie *Dirty Dancing*) with TD's financial services, even though the advertisements clearly promote TD's financial services and do not mention Lions Gate or *Dirty Dancing*, or attempt to pass off products of TD as from Lions Gate or vice versa. Plaintiffs argue this consumer confusion is caused by the advertisements' use of Lions Gate's trademark, NOBODY PUTS BABY IN A CORNER.

The Court cannot see how this is different from a copyright infringement claim, or a claim that Defendants have failed to obtain the permission of the author of the "idea, concept, or communication embodied in those goods" Plaintiff claims to have licensed to use its phrase. Cf. Deckers Outdoor Corp. v. J.C. Penney Co., 45 F.Supp.3d 1181, 1184–86, 1188–89 (C.D.Cal.2014). Assuming copyrights in the line "Nobody puts Baby in a corner," or in the film *Dirty Dancing*, an unauthorized use of the copyrighted work includes copying the work and distributing it to the public as well as making an unauthorized derivative work—like making an advertisement using copyrighted work and distributing the ad to the public.

That is what happened in this case, as alleged in the FAC. Defendants made an advertisement and used elements from the film *Dirty Dancing*: they used one of the most famous lines, "Nobody puts Baby in a corner," and made a new tag line from it, "Nobody puts your old 401k in a corner; they played on the famous concluding dance scene with images of a man lifting a piggy bank over head; they referenced the famous song playing during that dance with another tag line, "Because retirement should be the time of your life." These actions are potential violations of Plaintiff's copyright in *Dirty Dancing*, but there is

no trademark infringement or unfair competition based on trademark infringement.

And while the Court acknowledges that there are instances where a communicative good can be protected under both copyright and trademark, that is not present here. See Tristar Pictures, Inc., No. CV 99–07655 DDP, 1999 WL 33260839, at *3. The problem in this case is that the alleged wrongful conduct is Defendants' unauthorized use of NOBODY PUTS BABY IN A CORNER. Plaintiff alleges that this would cause consumer confusion as to Lion's Gate's association with the TD Defendants and their services. But this exact claim and theory can and is made in Plaintiff's copyright infringement cause of action: that the protected elements of *Dirty Dancing*, including the line "Nobody puts Baby in a corner," were publicly used without the authorization of the sole licensor of *Dirty Dancing*, Lions Gate. (FAC ¶¶ 82–88.)

The only difference between Plaintiff's copyright and trademark claims is that in the latter claims, Plaintiff's allege that consumers will be confused by the unauthorized use as to Lions Gate's association with the TD Defendants and their services. But the same *rights* are alleged in the causes of action—the right to be the exclusive licensor and user of the sentence "Nobody puts Baby in a corner." Therefore, Plaintiff's trademark infringement and unfair competition causes of action are also dismissed with prejudice because they are preempted by the Copyright Act and so any amendment would be futile.

The cases Plaintiff relies on to show there is a separate trademark claim here are not persuasive. First, this Court's decision in Tristar Pictures was pre-Dastar and so does not answer the questions presented in this case. Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700 (9th Cir. 2004), was post-Dastar, but did not deal with Dastar at all or copyright preemption in any significant way. Id. at 721. It certainly does not stand for the proposition that Plaintiff cites it for: "Trademark claims cannot be preempted by the Copyright Act." (Opp'n at 17.) Plaintiff's other cases are inapposite because they involve different factual scenarios and causes of action, with resulting different theories of trademark protection and preemption. See, e.g., Ward v. Andrews McMeel Pub., LLC, 963 F.Supp.2d 222, 235–36 (S.D.N.Y.2013) (trade dress); Profoot, Inc. v. MSD Consumer Care, Inc., No. 11–7079, 2012 WL 1231984, at *3 (D.N.J. Apr. 12, 2012) (trade dress); Perfect 10, Inc. v. Google, Inc., No. CV 04–9484 AHM, 2008 WL 4217837, at *8–9 (C.D.Cal. July 16, 2008) (state law causes of action including publicity and misappropriation).

Plaintiff's strongest cases are Bach v. Forever Living Products U.S., Inc., 473 F.Supp.2d 1110 (W.D.Wash.2007), and Butler v. Target Corp., 323 F.Supp.2d 1052 (C.D.Cal.2004). Bach involved the defendants' use of the title, character, name, text, and photographs from the book *Jonathan Livingston Seagull*. Bach, 473 F.Supp.2d at 1113. The defendants not only used the intellectual property associated with the book in their own materials, but they also stated in advertising their products that the brand "is the Jonathan brand" and that "Jonathan is really the basis of what Forever is about." Id. at 1113–14. The court analyzed whether the plaintiffs' copyright claims preempted their trademark and trade dress claims and determined that there were elements of both:

Plaintiffs' rights in the *name* and *title* of Jonathan Livingston Seagull and the *trade dress* of the book cover ... are protected under trademark law, not copyright law, because it is the name, title, and trade dress that are the source-identifying marks associated with Plaintiffs. And Plaintiffs' rights in the JLS *character*, the *photograph* that

FLP used as its logo, and the portions of the copyrighted text used by FLP, are protected under copyright law, not trademark law, because the character, *text*, and images in *Jonathan Livingston Seagull* are the artists' creative work. Id. at 1118. Distinguishing Dastar, the court stated that this case did not involve the use of trademark law to prosecute plagiarism of creative work.

This case does not persuade this Court to find that the trademark and copyright claims here can go forward. NOBODY PUTS BABY IN A CORNER is a part of the *text* of the copyrighted work *Dirty Dancing*. To the extent Plaintiffs argue it is also a source-identifying mark associated with Lions Gate, the Court notes that cases have held, like Bach here, that where copyright and trademark rights are found in the same expressive product, they protect different parts of that good, just like the court described above in Bach. See also Tristar Pictures, No. CV 99–07655, 1999 WL 33260839, at *3 (citing Universal City Studios, Inc. v. Nintendo Co., 578 F.Supp. 911 (S.D.N.Y.1983)). That is not the case here, particularly where the FAC alleges the trademark claims while relying not only on the alleged mark, but also on other elements from the film *Dirty Dancing*.

Butler involved the defendant's use of plaintiffs' copyrighted musical work and sound recording, *Rebirth of Slick (Cool like Dat)*. Butler, 323 F.Supp.2d at 1054. The defendant played the sound recording as the soundtrack to its national advertising campaign, and also had ads and signs at stores stating, "Jeans Like That," "Denim Like That," "Shoes Like That," and so on. Id. The plaintiffs sued for infringement of the right to publicity, unfair business practices, and Lanham Act claims. Id. Every cause of action based on the defendant's use of the sound recording was held preempted by the Copyright Act. Id. at

1060. However, the right of publicity, unfair business practices based on the use of the plaintiffs' identity, and the Lanham Act claim based on false endorsement through use of the plaintiffs' identity were all found not preempted. Id.

The opinion never mentions Dastar, but this makes sense once the causes of action are examined. The plaintiffs in Butler were not like Plaintiff here and claiming solely that the use of a famous line, "Cool like Dat," as modified and used in advertising was a violation of the plaintiffs' trademark rights in using that phrase. Instead, the plaintiffs in Butler claimed that the use of something so closely associated to their famous persona was a misappropriation of their publicity and a false endorsement where the "mark" for Lanham Act purposes is their celebrity identity. Such a theory of Lanham Act and unfair business practices causes of action is not similar to the one espoused by Plaintiff in this case, and not necessarily covered by Dastar.

■■ Lastly, Plaintiff has a dilution cause of action under both federal and state law. (FAC ¶¶ 74-81 (citing 15 U.S.C. §§ 1125(c)(1), 1127; Cal. Bus. & Prof. Code § 14247).) These causes of action have the same elements: (1) the mark must be famous and distinctive; (2) the defendant must use the mark in commerce; (3) defendant's use must begin after the mark is famous; and (4) defendant's use must be likely to cause dilution, such as by (a) blurring or (b) tarnishment. Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 634 (9th Cir.2008). These causes of action require the defendant to be using a mark that is identical or nearly so to the plaintiff's mark. Id.

■■ Plaintiff's FAC pleads that the mark NOBODY PUTS BABY IN A CORNER is famous and distinctive, and was such before Defendants ever used it in their ads. Plaintiff claims that Defendants have used the mark in Defendants' ads,

but that is not the same as alleging that Defendants use Plaintiff's mark, or a mark nearly identical to it, as the mark for Defendants' own goods—which would be an allegation that appears clearly contradicted by the facts of this case. Thus, it does not appear that as pled, Defendants have used the mark in commerce in the sense that the law requires. There does not appear to be any dispute or contrary facts that Plaintiff could plead to show that Defendants used the allegedly famous mark as Defendants' own mark or to identify Defendants' services. Therefore, while not perhaps preempted by the Copyright Act, the Court finds that the dilution cause of action is also dismissed with prejudice under Rule 12(b)(6) for failure to state a claim because there are no facts that would support this cause of action so any amendment would be futile.

## IV. CONCLUSION

For all the reasons discussed above, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss.

IT IS SO ORDERED.